UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNADETTE YOUNG,

        Plaintiff,        CIVIL ACTION NO. 13-cv-13338

        v.        DISTRICT JUDGE JOHN CORBETT O'MEARA

COMMISSIONER OF        MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Bernadette Young seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 17). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

### I.    RECOMMENDATION

The undersigned recommends that Plaintiff's Motion for Summary Judgment (Docket no. 13) be DENIED and that Defendant's Motion for Summary Judgment (Docket no. 17) be GRANTED.

## II.     PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income with a protective filing date of June 15, 2010, alleging disability beginning February 28, 2008, due to fibromyalgia, pinched nerves in her back, bilateral carpal tunnel syndrome, an underactive thyroid, and depression.  (*See* TR 12, 144.)  The Social Security Administration denied Plaintiff's claims on May 3, 2011, and Plaintiff requested a *de novo* hearing.  (TR 12.)  On January 31, 2012, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Ramona L. Fernandez. (TR 12, 21.)  In a March 14, 2012 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 12-21.)  The Appeals Council declined to review the ALJ's decision (TR 1-6), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

### A.      Plaintiff's Testimony

Plaintiff summarized her hearing testimony as follows:

> The plaintiff testified that she last worked in 2008 as a machine operator. (Tr. 32) She is unable to currently work due to chronic pain and anxiety issues.  She attends weekly anger management and is under the care and treatment of a psychiatrist.  (Tr. 33) She has used a cane since 2005.  (Tr. 38-39)
>
> The plaintiff estimated that she could stand for about 15 minutes on a good day.  (Tr. 39) Back and leg pain limits her ability to sit and stand.  (Tr. 40) She usually sits with her legs and feet elevated.  (Tr. 50-51) She has used a cane since 2005.  (Tr. 52) She uses a motorized cart to go shopping.  (Tr. 53) She is unable to do chores around the house.  (Tr. 41)
>
> The plaintiff typically has 2-3 crying spells per day.  (Tr. 49)

(Docket no. 13 at 11-12.) The undersigned has reviewed the hearing transcript and will cite to it as necessary throughout this Report and Recommendation.

    **B.**  **Vocational Expert's Testimony**

  First, ALJ asked the Vocational Expert (VE) whether an individual who could perform a full range of light work, except only frequently climbing, stooping, kneeling, crouching, crawling, or balancing, and only occasionally using ladders, ropes, or scaffolds, and who was capable of performing unskilled work with simple instructions that did not mandate an hourly production rate would be able to perform any of Plaintiff's past work. (TR 58.) The VE answered in the negative. (TR 58.) The ALJ asked the VE to assume that the individual described above had the same vocational profile as Plaintiff relative to age, education, and work experience, and asked the VE if there would be any other jobs for such an individual existing in significant numbers in the region or nation. (TR 58.) The VE responded that there would be unskilled work at the light exertional level available to such an individual, such as jobs involving security and protective services, for which there were approximately 2,500 available; some assembly work, for which there were approximately 1,500 jobs available; and a packager, for which there were approximately 2,000 available jobs. (TR 59.) The VE explained that these jobs were located in southeast Michigan. (TR 59.)

  The ALJ then asked the VE to consider whether any of those jobs would still be available, or whether any other jobs existing in significant numbers would be available to that individual if she could only occasionally climb, stoop, kneel, crouch, crawl, or balance, should never use ladders, ropes, or scaffolds, and could only handle, finger, or grasp on a frequent basis. (TR 59-60.) The VE replied that the security and packager positions would still be available; however, the assembly work would be reduced to a small products assembler with approximately 1,000 positions available. (TR

3

60.)

The ALJ subsequently asked the VE if any of those jobs would remain or if any others would exist in significant numbers if the individual required the opportunity to change positions after sitting or standing for fifteen minutes. (TR 60.) The VE answered that the number of available security positions would be reduced to about 1,500, the number of available assembly positions would be reduced to about 500, and the number of available packager positions would be reduced to about 1,000. (TR 60.) The VE added that there would be other jobs available given those limitations, such as inspecting/sorting type work, for which there were approximately 1,000 jobs available, and a counter clerk/rental clerk, for which there were approximately 2,000 jobs available. (TR 61.) The ALJ also asked the VE if any of those jobs would remain or if there were any others existing in significant numbers that the same individual could perform if she could only occasionally handle, finger, or grasp. (TR 61.) The VE responded that this limitation would rule out most of the aforementioned jobs except for the counter/rental clerk. (TR 61.) The VE added that about 500 jobs would be available to that individual as a tanning salon attendant. (TR 61.)

Next, the ALJ asked the VE whether, with the foregoing description of the individual in effect and if that individual could only lift a maximum of five pounds, any jobs would exist in the region or nation for that individual. (TR 62.) The VE replied that the five pound limitation would rule out light work, which would limit the individual to unskilled, sedentary work as a protective service surveillance system monitor, for which there were 1,000 jobs available. (TR 62.) When asked by the ALJ whether the ability to perform any of the jobs cited would be affected if the individual required three or more work absences per month, the VE answered that full-time, competitive jobs would be ruled out. (TR 62.)

4

Lastly, Plaintiff's attorney examined the VE. He asked the VE to provide the highest amount of monthly absences that a worker would be allowed and still be able to maintain employment. (TR 63.) The VE responded that generally, two absences would be tolerated per month. (TR 63.) Plaintiff's attorney also asked whether the individual would be able to perform any of the work previously identified by the VE if she had to elevate her feet above the hips for more than one hour per day. (TR 63.) The VE testified that such a requirement would preclude all work. (TR 64.)

### C. Medical Evidence

Plaintiff's account of her medical history is largely consistent with, yet more detailed than, the ALJ's discussion of Plaintiff's medical record. (*Compare* docket no. 13 at 12-15, *with* TR 17-19.) Defendant did not provide a separate account of Plaintiff's medical history in her brief, as she asserts that the ALJ adequately presented the medical evidence in this case. (Docket no. 17 at 5.) Thus, the undersigned, having conducted an independent review of Plaintiff's medical record, hereby incorporates by reference the medical record as set forth in Plaintiff's Motion (Docket no. 13 at 12-15) and the ALJ's opinion (TR 17-19). The undersigned will incorporate additional comments and citations as necessary throughout this Report and Recommendation.

### IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013; that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 28, 2008; and that Plaintiff suffered from the following severe impairments: status post-bilateral carpal tunnel surgery, fibromyalgia, chronic back pain, depression, and hypertension. (TR 14-15.) The ALJ also found, however, that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 15-16.) The ALJ then found that Plaintiff had the following residual functional

capacity (RFC):

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), with the following limitations: the claimant can climb, stoop, kneel, crouch, crawl, or balance only occasionally.  She can never climb ladders, ropes, or scaffolds.  The claimant must be able to change positions after standing or sitting for fifteen minutes.  She can frequently, but not constantly, handle, finger, or grasp.  The claimant is limited to unskilled work with simple instructions.  She cannot be subject to hourly production quotas.

(TR 16-20.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 20-21.)  Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from February 28, 2008, through the date of the ALJ's decision.  (TR 21.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536

(6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

      **B.**     **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

    (1)     Plaintiff was not presently engaged in substantial gainful employment; and

    (2)     Plaintiff suffered from a severe impairment; and

    (3)     the impairment met or was medically equal to a "listed impairment;" or

    (4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence"

may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four because the ALJ (1) erred in assessing Plaintiff's severe impairments; (2) failed to pose complete and accurate hypothetical questions to the VE; and (3) improperly assessed Plaintiff's complaints of pain, limitations, and credibility. (*See* docket no. 13.)

#### 1. *The ALJ's Assessment of Plaintiff's Impairments*

Plaintiff first challenges the ALJ's step-two determination of whether Plaintiff has a severe medically determinable impairment or combination of impairments. A severe impairment or combination of impairments is one which significantly limits the claimant's physical or mental

8

ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment will be considered non-severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted).

At step two of the sequential evaluation process, the ALJ found that Plaintiff has the following severe impairments: "status post-bilateral carpal tunnel surgery, fibromyalgia, chronic back pain, depression (non-severe), and hypertension (controlled with medication)." (TR 14.) Plaintiff asserts that the ALJ's finding that Plaintiff's "depression (non-severe)" is a severe impairment is unclear. (Docket no. 13 at 15-16.) The undersigned agrees. As Defendant points out, however, while the ALJ's semantics are not ideal, they do not constitute reversible error. (Docket no. 17 at 10-11.) The step-two severity analysis is simply a threshold determination. "[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps" and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims. *Anthony v. Astrue*, 266 F. App'x at 457.

Plaintiff is also confused by the ALJ's step-two determination of Plaintiff's "status post-bilateral carpal tunnel surgery" as a severe impairment. (Docket no. 13 at 16.) Plaintiff argues that it is a recitation of a medical procedure performed on Plaintiff, not an impairment. (*Id.*) Plaintiff misinterprets the ALJ's step-two determination. The ALJ did not categorize Plaintiff's *surgery* as a severe impairment; she categorized Plaintiff's *status* post surgery as a severe impairment.

9

Defendant aptly clarified this matter in her brief: "By identifying [Plaintiff's status post-bilateral carpal tunnel surgery] as a severe impairment, the ALJ made clear that to the extent Plaintiff experienced any symptoms after her carpal tunnel release surgery, the ALJ would regard those symptoms as severe." (Docket no. 17 at 18.)

At step three of the sequential evaluation process, the ALJ determined whether the severity of Plaintiff's impairments met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ evaluated Plaintiff's carpal tunnel syndrome under listing 1.08 and determined that it did not meet the listing's criteria because Plaintiff was not under surgical management and had not lost major function of her upper extremities. (TR 15.) The ALJ then evaluated Plaintiff's depression under listing 12.04 and found that Plaintiff had a mild restriction in daily living activities; mild difficulties in social functioning; moderate difficulties with regard to concentration, persistence, or pace; and had not experienced any episodes of decompensation. (TR 15-16.) Based on these findings, the ALJ concluded that Plaintiff's depression did not satisfy the criteria for listing 12.04. Plaintiff does not challenge the ALJ's step-three determinations.

Plaintiff argues that the ALJ failed to account for Plaintiff's mental limitations in her assessment of Plaintiff's residual functional capacity and in the hypothetical questions presented to the VE. (Docket no. 13 at 16-20.) The ALJ assessed Plaintiff's mental RFC as follows: "The claimant is limited to unskilled work with simple instructions. She cannot be subject to hourly production quotas." (TR 16.) When the ALJ makes a finding that a claimant has moderate limitations in concentration, persistence or pace, the ALJ must account for such limitations in Plaintiff's RFC and in his hypothetical questions to the VE. *See Tinker v. Astrue*, No. 08-11675, 2009 WL 3064780, at *8 (E.D. Mich. Sept. 22, 2009). Findings of moderate limitations in

concentration, persistence, or pace do not necessarily preclude "simple, routine, unskilled work." *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844-BC, 2010 WL 3905375, at *2 (E.D. Mich. Sept. 30, 2010) (citations omitted). Such limitations may, however, result in the claimant being unable to meet quotas, stay alert, or work at a consistent rate of speed. *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005).

First, Plaintiff claims that the ALJ did not state her findings regarding Plaintiff's ability to function effectively on a sustained basis, need for supervision, or ability to get along with coworkers, supervisors, or the general public. (Docket no. 13 at 17.) Defendant argues that the ALJ sufficiently considered these limitations when she analyzed, adopted, and relied upon the opinion of the State agency medical consultant, Darrell Snyder, Ph.D. (Docket no. 17 at 12.) On April 29, 2011, Dr. Snyder completed a mental residual functional capacity assessment of Plaintiff. (TR 268-70.) He found that Plaintiff's abilities to sustain an ordinary routine without special supervision, to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes were not significantly limited. (TR 268-69.) Dr. Snyder then expounded:

> The claimant can understand, remember and follow instructions involving content that is basic and straightforward but not moderately complex. She can sustain routine and repetitive tasks but would falter on more detailed or complex tasks.
>
> She could tolerate average contact with the public, peers and supervisors.
>
> She is unable to adapt to enhanced work productivity such as fast paced or high production quota conditions due to emotional problems (and potentially due to physical problems as well).
>
> In sum, this claimant can sustain routine and repetitive tasks of 1-2 steps given the above restrictions.

(TR 270.) The ALJ considered Dr. Snyder's opinion, found that it was consistent with Plaintiff's RFC and testimony, and assigned it significant weight. (TR 19.) Notably, Plaintiff does not challenge the ALJ's assessment of Dr. Snyder's opinion. For these reasons, the ALJ appropriately did not include any limitations regarding Plaintiff's ability to function effectively on a sustained basis, need for supervision, or ability to get along with coworkers, supervisors, or the general public in Plaintiff's mental RFC.

Plaintiff also argues that the ALJ's assessment of Plaintiff's mental RFC is insufficient because it "failed to accurately describe [Plaintiff's] psychiatric/psychological abilities and limitations and failed to quantify [Plaintiff's] ability to maintain attention and concentration in a work setting." (Docket no. 13 at 17.) Plaintiff specifically alleges that it lacks limitations regarding the length of time Plaintiff could maintain attention, remain on task, and be productive. (*Id*. at 17-19.) The analysis used above also applies here. In assessing Plaintiff's mental residual functional capacity, Dr. Snyder opined that Plaintiff's ability to maintain attention and concentration for extended periods was not significantly limited. (TR 268.) He also found that Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was not significantly limited. (TR 269.) In adopting Dr. Snyder's opinion, the ALJ logically did not include any such limitations in Plaintiff's mental RFC. The ALJ did, however, find that Plaintiff cannot be subject to hourly production quotas, a common result of moderate limitations in concentration, persistence, or pace.

For the foregoing reasons, the undersigned finds that the ALJ's assessments of Plaintiff's severe impairments and her mental RFC are supported by substantial evidence. Plaintiff's Motion should be denied with regard to this issue.

### 2. *The ALJ's Hypothetical Questions to the VE*

Plaintiff argues that the ALJ erred in the formulation of the hypothetical questions presented to the VE because they did not accurately describe her abilities and limitations. (Docket no. 13 at 16-20 (citing *Cole v. Sec'y of Health and Human Servs*, 820 F.2d 768, 775-76 (6th Cir. 1987)).) In a hypothetical question posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record, and the ALJ did so. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The Sixth Circuit has held that hypothetical questions to experts are not required to include lists of claimant's medical impairments. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). As set forth above, the ALJ's RFC was supported by substantial evidence in the record and included the limitations supported by the record. The ALJ presented all of the limitations of the RFC in his hypothetical question to the VE, and the VE testified that such an individual would not be capable of performing Plaintiff's prior work, but that there were jobs available for a person with these limitations, which the VE cited in detail. The ALJ properly relied on the VE's testimony to find that there are significant numbers of jobs available which Plaintiff can perform. The ALJ's decision at step five is based on substantial evidence.

### 3. *The ALJ's Assessment of Plaintiff's Credibility*

Plaintiff argues that "the ALJ's decision represents a type of 'cherry picking' to cite general sporadic, routine, limited daily activities performed by the plaintiff as evidence that she was not credible and that she retained the ability to satisfactorily function in a competitive work setting." (Docket no. 13 at 20.) "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But

13

credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that she gave to Plaintiff's statements and the reasons for that weight. After a thorough discussion of Plaintiff's testimony, the ALJ began her discussion of Plaintiff's credibility by finding

that "[t]he record contains little evidence of the claimant's alleged impairments." (TR 17.) Plaintiff challenges this finding as unsupported by the record and argues that the record contains tests which demonstrated severe carpal tunnel syndrome, reports from a treating source that confirm right wrist pain, and records from Plaintiff's mental health providers. (Docket no. 13 at 21.) Indeed, the ALJ discussed these records in her decision. (TR 17-19.) Specifically, the ALJ discussed a March 9, 2009 work release generated by Plaintiff's treating physician, Kenneth A. Scott, D.O., who released Plaintiff to return to work with the following restrictions: no lifting more than five pounds, a brace is needed for work, and no extreme movement of her hands and wrists. (TR 18 (citing TR 216).) Plaintiff asserts that the ALJ ignored these restrictions when she determined that Plaintiff had the ability to perform light work. (Docket no. 13 at 21.) Actually, the ALJ gave Dr. Scott's March 9, 2009 opinion limited weight because those "limitations were given directly following [Plaintiff's] carpal tunnel surgery and there was no indication that these restrictions would have to continue infinitely." (TR 18.)

The ALJ supported her finding that the record contains little evidence of Plaintiff's alleged impairments as follows:

> The claimant ceased complaining of and treating for hand and wrist pain six months after her 2008 carpal tunnel release surgery. She was diagnosed with fibromyalgia in the summer of 2008, but has only sought treatment for this impairment at three office visits in the late summer and fall of 2010 (Exhibit 4F). The claimant testified that she is often mentally unable to leave her house, but her function report states that she visits her sister, shops at the dollar store, attends church, and has picnics with her family (Exhibit 5E). The claimant alleges a need to elevate her feet. This need is not supported by the medical record. She testified to visual and auditory hallucinations, but the treatment records do not reflect any psychosis. The claimant only received mental health treatment for one year (2011), and it does not appear that her visits took place on a regular basis.

(TR 19.)

15

> The ALJ also discounted Plaintiff's credibility based on inconsistencies in her testimony:
>
> She stated that she has been using a cane to ambulate since 2005. However, she worked until 2008, and she testified that she left her cane in the car while she was at work, and just leaned on the counter when she needed support. When questioned at the hearing, the claimant stated that she had not used marijuana since she was a teenager. However, her counseling records note that [she] last smoked marijuana in February 2011 (Exhibit 10F, p.5). In addition, the claimant alleges inability to work, but stated at the hearing that she had looked for work during her alleged period of disability but was unable to secure any because she listed carpal tunnel syndrome as a hindrance on her applications.

(TR 19.)

With regard to the ALJ's credibility evaluation of Plaintiff's daily activities, Plaintiff argues that "sporadic daily activities do not equate with or demonstrate the ability to satisfactorily perform work in a competitive work setting." (Docket no. 13 at 23.) Seemingly, Plaintiff suggests that Plaintiff's daily activities cited by the ALJ were the sole determinative factor in the ALJ's finding that Plaintiff's allegations were less than credible and that Plaintiff was not disabled. To the contrary, as evidenced above, the ALJ proffered several specific reasons for discounting Plaintiff's credibility in addition to Plaintiff's daily activities. Furthermore, the ALJ's determination that Plaintiff was not disabled is based on her evaluation of the entire record, not just Plaintiff's daily activities. Plaintiff's assertion that the ALJ "cherry picked" general, sporadic, routine daily activities performed by Plaintiff to determine that Plaintiff was not credible and not disabled lacks merit. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence; Plaintiff's Motion should be denied.

### 4. *The ALJ's Duty to Recontact Plaintiff's Treating Physicians*

In her decision, the ALJ discussed Plaintiff's medical records generated from her treatment with Dr. Ernesto R. Lao in 2008 and Dr. Herbert L. Isaac, M.D. in 2010 and 2011. (TR 18 (citing TR 186-203 and 225-38).) The ALJ noted that most of Dr. Lao and Dr. Isaac's records are

handwritten and nearly illegible, yet she provided a brief summary of each. (TR 18.) Plaintiff claims that the ALJ should have recontacted Drs. Lao and Isaac for clarification (docket no. 13 at 25-26); the undersigned disagrees.

Social Security Ruling 96-5p states that the Commissioner must make every reasonable effort to recontact treating sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear. SSR 96-5p, 1996 WL 374183, at *6 (Jul. 2, 1996). The Social Security Administration defines "medical opinions" as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); § 416.927(a)(2).

Here, Dr. Lao's eight pages and Dr. Isaac's four pages of handwritten records are not so illegible to discern that they do not contain medical opinions as defined by the regulations; therefore, the recontacting requirements of SSR 96-5p are not triggered. *See Mohssen v. Comm'r of Soc. Sec.*, No. 12-14501, 2013 WL 6094728, at *9 (E.D. Mich. Nov. 20, 2013). Plaintiff's medical records from Drs. Lao and Isaac are merely treatment notes that document Plaintiff's medical history, vital signs, subjective complaints (i.e. fibromyalgia, depression, chest pain), clinical status, and medications on the treatment date. These records do not contain any opinion regarding the nature and severity of Plaintiff's impairments or Plaintiff's functional limitations. The ALJ did not have a duty to recontact Drs. Lao or Isaac.

**VI.    CONCLUSION**

For the reasons stated herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no. 13) be DENIED and Defendant's Motion for Summary Judgment (docket no. 17) be GRANTED.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: February 15, 2015      s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 15, 2015        s/ Lisa C. Bartlett
                                              Case Manager